IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NIC INSURANCE COMPANY :
: CIVIL ACTION
v. :
: NO. 09-0877
PJP CONSULTING, LLC, :
t/a CAVANAUGH'S RIVER DECK, and :
DZARNYI PUKUMA :

**SURRICK, J.**                                                            **OCTOBER  22 , 2010**

## MEMORANDUM

Presently before the Court are Defendant Dzarnyi Pukuma's Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and the Declaratory Judgment Act, 28 U.S.C. § 2201 (ECF No. 14), and Plaintiff NIC Insurance Company's Cross-Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (ECF No. 20). For the following reasons, Defendant's Motion to Dismiss will be granted. Plaintiff's Cross-Motion for Summary Judgment will be dismissed as moot.

**I. BACKGROUND**

NIC Insurance Company ("NIC") filed this action against PJP Consulting, LLC, t/a Cavanaugh's River Deck ("Cavanaugh's"), and Dzarnyi Pukuma ("Pukuma"), seeking a declaration pursuant to 28 U.S.C. § 2201 that its obligation to defend Cavanaugh's against a lawsuit filed by Pukuma in the Philadelphia Court of Common Pleas is limited to the $50,000 of coverage provided under the Assault and Battery Limits of Liability Endorsement in the insurance policy NIC issued to Cavanaugh's. In addition, NIC seeks a declaration that its obligation to indemnify Cavanaugh's against any judgment in Pukuma's favor is limited to the

$50,000 Assault and Battery Limits of Liability Endorsement, and that this $50,000 limit is eroded by legal fees and other expenses related to Cavanaugh's claim for indemnity.

On September 4, 2006, Pukuma was attacked by four visibly intoxicated patrons at Cavanaugh's River Deck, a bar located on the Delaware River waterfront. (Def.'s Mot. Dismiss Ex. A ¶¶ 8-17, ECF No. 15.) The initial altercation occurred inside Cavanaugh's, where Pukuma's attackers beat him, struck him in the head with a bottle, and slashed his face with a knife. (*Id.* ¶¶ 10-12.) Bouncers employed by Cavanaugh's restrained Pukuma and his assailants. (*Id.* ¶ 13.) The bouncers removed the four attackers from the bar but did not call the police. (*Id.* ¶ 14.) Instead, the bouncers removed a still-dazed Pukuma from the bar while his attackers were still outside the bar. (*Id.* ¶ 15.) Once Pukuma was outside, and while he was being restrained by Cavanaugh's bouncers, the four assailants again attacked Pukuma, stabbing him in the chest. (*Id.* ¶¶ 15-17.) Pukuma suffered various injuries from the two altercations, including a collapsed lung from the stab wound. (*Id.* ¶ 21.) The four assailants fled and were never apprehended. (*Id.* ¶¶ 15-17.)

Pukuma filed suit against Cavanaugh's in the Court of Common Pleas on March 7, 2008. An amended complaint was filed on October 1, 2008. (Compl. ¶ 13, ECF No. 1.) The amended complaint alleges that it was Cavanaugh's negligence that allowed the four assailants to injure Pukuma. (Def.'s Mot. Dismiss Ex. A ¶¶ 29-31.) On March 2, 2009, Cavanaugh's insurer, NIC, filed this declaratory judgment action against Cavanaugh's and Pukuma. NIC's Complaint alleges that the liability insurance policy that NIC issued to Cavanaugh's (the "Policy") contains a $1 million per occurrence limitation on liability. (*Id.* ¶ 13.) However, the Policy contains an Assault and Battery Limits of Liability Endorsement that limits to $50,000 NIC's liability for any

injuries arising out of an assault and battery. (*Id.* ¶¶ 22-23.) The Policy also contains a "defense within limits" ("DWL") provision that reduces the amount of coverage that is available to indemnify Cavanaugh's by the expenses NIC incurs in defending Cavanaugh's. (*Id.* ¶¶ 34-39.) Thus, if NIC incurs $20,000 in legal fees and expenses defending Cavanaugh's against Pukuma's claim, its liability limits would be reduced to $980,000 per occurrence for general liability or $30,000 for injuries arising out of an assault and battery. NIC alleges that once Cavanaugh's legal fees and expenses exhaust the applicable limits of liability, NIC has no further obligation to defend or indemnify Cavanaugh's. (*Id.* ¶ 39.) NIC therefore seeks a declaration (1) that NIC's obligation to defend and indemnify Cavanaugh's is limited to $50,000, as set forth in the Assault and Battery Limits of Liability Endorsement; (2) that this $50,000 limit of liability is reduced by the expenses NIC incurs on Cavanaugh's behalf; (3) that NIC has no further obligation to defend or indemnify Cavanaugh's upon exhaustion of the $50,000 limit of liability by the payment of expenses, a judgment, or settlement on behalf of Cavanaugh's; and (4) that upon exhaustion of the $50,000 limit of liability, NIC will be permitted to withdraw from Cavanaugh's defense. (*Id.*)

After NIC filed the Complaint in this Court, Pukuma sought leave to amend his complaint in state court in order to augment his negligence claims against NIC. (*See generally* Compl. Ex. A.) Before deciding Pukuma's motion for leave to amend his complaint, however, the Court of Common Pleas stayed the action pending our determination of the coverage issues NIC presents here. (Def.'s Mot. to Dismiss 3.)

Pukuma filed the instant motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), arguing that we should decline to exercise jurisdiction over NIC's declaratory judgment

3

action and permit the state-court action to go forward. (Def.'s Mot. to Dismiss 3-21.) NIC responded to Pukuma's motion to dismiss and submitted a cross-motion for summary judgment. (*See* Pl.'s Mot. for Summ. J., ECF No. 21.)

## II. LEGAL STANDARD

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a) (emphasis added). The Supreme Court has recognized that the permissive language of the Declaratory Judgment Act gives district courts "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Thus, "a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment . . . ." *Id*. at 288.

The Supreme Court has stated that in deciding whether to exercise jurisdiction over a declaratory judgment action, district courts "should ascertain whether the questions in controversy between the parties to the federal suit . . . can better be settled in the proceeding pending in the state court." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942). The Third Circuit Court of Appeals has articulated four factors that district courts should consider in exercise of their discretion in declaratory judgment actions. Those factors are (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in settlement of the uncertainty of the obligation; and (4) the availability and relative convenience of other remedies. *Scottsdale Ins. Co. v. Broaddus*, No. 08-3241, 2009 WL 349697, at *2 (E.D. Pa. Feb. 11, 2009)

4

(citing *United States v. Dep't of Envtl. Res.*, 923 F.2d 1071, 1075 (3d Cir. 1991)). Moreover, the Third Circuit has provided three additional considerations for determining whether to exercise jurisdiction over insurance-coverage declaratory judgment actions: (1) a general policy of restraint when the same issues are pending in state court; (2) an inherent conflict of interest between an insurer's duty to defend in state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion; and (3) avoidance of duplicative litigation. *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 134 (3d Cir. 2000) (citing *Dep't of Envtl. Res.*, 923 F.2d at 1075-76). Finally, district courts should "give serious consideration to the fact that they do not establish state law, but are limited to predicting it. This is especially important in insurance coverage cases . . . ." *Id.* at 135. Thus, "where the applicable state law is uncertain or undetermined, district courts should be particularly reluctant to entertain declaratory judgment actions." *Id.*

## III. ANALYSIS

Pukuma argues that this action is duplicative of the state-court action and that significantly more factual development is necessary in the state-court action before issues of insurance coverage can be decided. (Def.'s Mot. to Dismiss 15-16.) NIC contends that Pukuma's arguments as to why we should decline to hear this declaratory judgment action are "simply baseless," "specious," "without merit," and "entirely bogus." (Pl.'s Mot. for Summ. J. 17.)

### A. Unsettled Issues Under Pennsylvania Law

The presence of unsettled state-law issues weighs heavily against exercising jurisdiction over this declaratory judgment action. *See Summy*, 234 F.3d at 135 (counseling hesitation in

exercising jurisdiction over declaratory judgment actions in which the state law involved is unsettled).  Specifically, the defense within limits provision presents unsettled issues under Pennsylvania law.  First, it is unclear whether such a provision is even enforceable under these circumstances.  Second, the DWL provision introduces significant complexity into the analysis of NIC's duty to defend and indemnify Cavanaugh's.

While no Pennsylvania court has addressed the issue, we question whether the DWL provision in this case is consistent with Pennsylvania public policy.  Several state legislatures and insurance commissions have banned or limited the use of DWL provisions.  For example, Minnesota prohibits DWL provisions, with exceptions for professional liability policies with coverage in excess of $100,000, large commercial risks, and environmental impairment liability insurance.  Minn. Stat. § 60A.08 Subd. 13.  An Oregon statute provides that liability insurance contracts containing a DWL provision must be "filed with and approved by the Director of the Department of Consumer and Business Services."  Or. Rev. Stat. § 742.063(1).  New York Insurance Department regulations permit DWL provisions only in certain circumstances, and the amount of expenses that can reduce the policy limits is capped at 50% of the policy limits unless the insured is given full control of its defense.  N.Y. Comp. Codes R. & Regs. tit. 11, § 71.3.

While Pennsylvania does not presently regulate DWL provisions, they may be inconsistent with Pennsylvania public policy in situations where, as here, the amount of potential coverage is so low—$50,000, according to NIC—that legal expenses would almost certainly exhaust the Policy limits long before trial in the state-court action.  This raises legal and ethical issues.  First, when insurance coverage is the only asset available to satisfy a judgment, it places a plaintiff such as Pukuma in a difficult position:  he can settle immediately for an amount that is

significantly below what his claim may be worth, or he can pursue his claim in court and risk winning an uncollectible judgment. Counsel for NIC has not hesitated to remind Plaintiff's counsel of this dilemma. This aspect of the DWL provision could also act as an incentive to insurers to pursue a strategy in which they spend heavily on legal fees in order to increase the pressure on plaintiffs to settle at the quickly dwindling policy limits.[1] In addition, NIC may seek to withdraw from Cavanaugh's defense as soon as the $50,000 coverage under the assault and battery limitation is exhausted. (Compl. ¶ 39.) This could leave Cavanaugh's in the position of being without counsel in the state-court action, although counsel for Cavanaugh's would need the court's permission to withdraw from the representation. *See* 42 Pa. Cons. Stat. § 1.16. It also presents ethical issues for NIC, which could simply refuse to settle Pukuma's claims for anything over the $50,000 assault and battery limitation and then withdraw from Cavanaugh's defense once its expenditures reach $50,000.[2]

In sum, whether the DWL provision is enforceable solely implicates Pennsylvania law. The Pennsylvania legislature and insurance department have not addressed the issue, and NIC correctly states that there is no case law in Pennsylvania addressing the enforceability of DWL

---

[1] Commentators have noted, however, that profligate spending by an insurer operating under a DWL provision could expose the insurer to a claim for bad faith. *See* Gregory S. Munro, *Defense Within Limits: The Conflicts of "Wasting" or "Cannibalizing" Insurance Policies*, 62 Mont. L. Rev. 131, 157 (2001) ("If settlement attempts by plaintiff's counsel meet with rejection or an aggressive stance by the defense, plaintiff faces the prospect of fighting a battle that will reduce the limit below that necessary for settlement or satisfaction of verdict. In such a situation, plaintiff has every incentive to attempt to manipulate the insurer into a position of having made a bad faith decision by refusing to settle and engaging in expensive defense.").

[2] The following articles provide significant insight into the ethical issues related to DWL provisions: David L. Brandon, *Burning Issues*, L.A. Lawyer, Apr. 2004, at 30; Munro, *supra*, at 131; Shaun McParland Baldwin, *Legal and Ethical Considerations for "Defense Within Limits" Policies*, 61 Def. Couns. J. 89 (1994).

provisions, although courts in other states have upheld such provisions. (Pl.'s Mot. for Summ. J. 14.) Whether the DWL provision is consistent with the public policy of the Commonwealth of Pennsylvania should be decided by the Pennsylvania judiciary—not by a federal court. *See Phila. Indem. Ins. Co. v. Healy*, 156 F. App'x 472, 478 (3d Cir. 2005) (non-precedential) (stating that it would be "quite inappropriate for federal courts to expand the public policy of [a] state, the construction of whose laws is the paramount responsibility of its own judiciary, to a point that no [state] court has suggested it reach"); *see also Summy*, 234 F.3d at 135 (counseling "hesitation by federal courts in exercising jurisdiction over declaratory judgment actions when the state law involved is close or unsettled"). This therefore counsels in favor of declining jurisdiction over this declaratory judgment action.

The DWL provision also raises questions about the proper analysis for determining the scope of NIC's duty to defend and indemnify Cavanaugh's. Ordinarily, the duty to defend and the duty to indemnify are two separate issues, with different legal standards for determining the scope of each. "An insurer's duty to defend an insured arises whenever the complaint filed by the injured party may potentially come within the policy's coverage." *Sphere Drake, P.L.C. v. 101 Variety, Inc.*, 35 F. Supp. 2d 421, 427 (E.D. Pa. 1999). Thus, courts can decide an insurer's duty to defend based solely on the pleadings in the underlying case. The duty to indemnify, on the other hand, "cannot be determined merely on the basis of whether the factual allegations of [the] complaint potentially state a claim against the insured. Actual indemnification depends upon the existence or nonexistence of facts not yet established" at the pleading stage. *C.H. Heist Caribe Corp. v. Am. Home Assurance Co.*, 640 F.2d 479, 483 (3d Cir. 1981). The duty to defend the insured therefore "carries with it the conditional obligation to indemnify until it becomes

8

clear that there can be no recovery within the insuring clause." *Pac. Indem. Co. v. Linn*, 766 F.2d 754, 766 (3d Cir. 1985) (applying Pennsylvania law and finding that insurer's duty to defend became a duty to indemnify when settlement precluded parties from developing facts that would show that the underlying claim was not within the scope of the policy). Put simply, courts can determine an insurer's duty to defend based solely on the pleadings but will often have to wait for sufficient development of the facts in the underlying case before they can determine its duty to indemnify.

The problem that the DWL provision presents in this case is that by making a single pool of money available for both defense and indemnification, it collapses the traditionally separate analyses of the duty to defend and the duty to indemnify into a single inquiry. Whether the Policy's assault and battery limitation applies determines the extent of NIC's duty to both defend and indemnify Cavanaugh's. This makes application of the traditional analysis problematic: it would be premature to decide the extent of NIC's duty to both defend *and* indemnify Cavanaugh's at the outset based solely on the pleadings, particularly when we are not certain whether the state court will permit Pukuma to amend the complaint in the underlying action. However, waiting for further factual development before deciding whether the assault and battery limitation applies leaves the parties in limbo—particularly NIC, which would face the difficult choice of either continuing to provide a defense beyond the $50,000 assault and battery limitation when it may have no obligation to do so or potentially facing legal exposure for withdrawing from Cavanaugh's defense prematurely.

This case presents complex and unsettled issues of state law that are more appropriately decided by the Pennsylvania judiciary. *See Brillhart*, 316 U.S. at 497 ("It is not our function to

find our way through a maze of local statutes and decisions on so technical and specialized a subject . . . . For one thing, it is too easy to lose our way."). We will therefore heed the Third Circuit's admonition that unsettled issues of state law are best left to the state courts to decide. *Summy*, 234 F.3d at 134. Principles of comity and federalism, as well as "considerations of practicality and wise judicial administration," *Wilton*, 515 U.S. at 288, counsel heavily in favor of declining to exercise jurisdiction over this declaratory judgment action.

B.   **Other Factors to Consider**

The considerations discussed above control the outcome of this case. However, a brief analysis of the factors the Third Circuit has set forth is appropriate. Our analysis of these factors is informed by our previous discussion of the unsettled state-law issues this case presents.

   1.   *The likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy*

A declaration of NIC's duties to Cavanaugh's would not resolve the uncertainty of obligation that gave rise to this action. The Court of Common Pleas has not yet ruled on Pukuma's motion to amend his complaint. Therefore we do not know which complaint will be the operative pleading in the state-court action. This Court cannot determine whether NIC has a duty to defend or indemnify Cavanaugh's without knowing what the pleadings will be in the state-court action. Even if we did decide the issue based upon the current posture of the state-court action, a declaration based on unsettled pleadings would do little to resolve uncertainty in this case, particularly when it would require resolution of several novel issues of Pennsylvania law. A decision by the Pennsylvania state courts on these unsettled issues once they become ripe for adjudication would be much more effective in reducing uncertainty in this litigation and is

preferable to having a federal court merely predict what a state court would decide. This factor therefore weighs in favor of declining jurisdiction.

   2. *The convenience of the parties*

There is no reason why the parties could not seek a declaration from the Philadelphia County Court of Common Pleas, which sits a few blocks away from the federal courthouse in Philadelphia. This factor therefore weighs in favor of declining jurisdiction.

   3. *The public interest in settlement of the uncertainty of the obligation*

The public interest would be better served by having a Pennsylvania court decide the unsettled issues of Pennsylvania law that permeate this case. This would provide precedent for future litigants and guidance to both insurers and insureds who are considering whether to include DWL provisions in their own insurance contracts. A non-precedential opinion by a federal district court would do little to clarify the state of this unsettled area of law. This factor weighs in favor of declining jurisdiction.

   4. *The availability and relative convenience of other remedies*

NIC can obtain a declaration of its rights and duties in the Philadelphia County Court of Common Pleas. *See* 42 Pa. Cons. Stat. § 7531 *et seq.* (authorizing Pennsylvania courts to hear declaratory judgment actions). The fact that NIC can obtain the same remedy in state court that it seeks here weighs in favor of declining jurisdiction.

   5. *A general policy of restraint when the same issues are pending in state court*

The underlying state-court case between Pukuma and Cavanaugh's is not parallel to this declaratory judgment action and does not present the same issues. The state-court case is a tort

action regarding Cavanaugh's liability for Pukuma's injuries, while this action seeks to clarify the scope of NIC's duty to defend and indemnify Cavanaugh's in the state-court action. In addition, NIC is not a party to the state-court action. However, the Third Circuit in *Summy* "did not make the pendency of identical state and federal declaratory actions a prerequisite to declining federal jurisdiction. Indeed, some of the *Summy* factors . . . contemplate a related state tort action, not a declaratory judgment action." *Broaddus*, 2009 WL 349697, at *3 (citing *Summy*, 234 F.3d at 134). Several courts in this Circuit have declined to exercise jurisdiction over declaratory judgment actions despite the absence of a parallel state-court declaratory judgment action. *See, e.g.*, *Mut. Benefit Ins. Co. v. Shawmut Woodworking & Supply, Inc.*, No. 08-2045, 2009 WL 1585809, at *4-5 (M.D. Pa. June 3, 2009) (declining jurisdiction in declaratory judgment action even though plaintiff insurance company was not a party to the underlying state-court action); *Broaddus*, 2009 WL 349697, at *5 (surveying cases and finding broad support for the proposition that district courts "retain discretion under the Declaratory Judgment Act to decline jurisdiction . . . despite the absence of a parallel state court action"); *Dixon v. Progressive N. Ins. Co.*, No. 08-1010, 2008 WL 4072816, at *2 (W.D. Pa. Aug. 27, 2008) (declining to exercise jurisdiction over declaratory judgment action because "the absence of a parallel state proceeding is clearly outweighed by the lack of any federal interest in this case"). The absence of an identical declaratory judgment action in state court does not by itself require us to exercise jurisdiction over this declaratory judgment action.

Moreover, the Third Circuit has recognized that even if the coverage issue is not currently pending in the state-court action, generally "it will as a matter of logic necessarily arise before the matter is concluded in state court." *Atl. Mut. Ins. Co. v. Gula*, 84 F. App'x 173, 175 (3d Cir.

2003) (non-precedential). This is the case here. As the state-court action progresses, the parties will develop facts sufficient to allow the court to determine whether the case falls within the assault and battery exclusion. In the meantime, NIC can file a separate declaratory judgment action in state court. *See* 42 Pa. Cons. Stat. § 7531 *et seq.* Thus, while this factor nominally weighs in favor of exercising jurisdiction, we find it to be significantly outweighed by the complex and novel issues of Pennsylvania law this case presents.

> 6. *An inherent conflict of interest between an insurer's duty to defend in state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion*

As is often the case in insurance coverage disputes, there is a conflict of interest between NIC's duty to defend Cavanaugh's in state court and its attempt to characterize the state-court action as falling within a policy exclusion. *See, e.g.*, *Capitol Indem. Corp. v. Piccotti*, No. 04-1571, 2005 WL 1677891 (M.D. Pa. July 18, 2005) (finding existence of a conflict of interest between insurer and insured that counseled in favor of declining jurisdiction). NIC has an incentive to characterize Pukuma's lawsuit as an assault and battery case, which would cause it to fall within the assault and battery limits of liability. Cavanaugh's would seek to characterize the underlying lawsuit as being outside the ambit of the assault and battery exclusion in order to obtain the higher $1 million limit on liability. This potential conflict is better handled by the state court and weighs in favor of declining jurisdiction.

> 7. *Avoidance of duplicative litigation*

As discussed above, this declaratory judgment action is not completely duplicative of the state-court action, as the two cases are not parallel. There is considerable overlap between the two actions, however, and coverage issues may depend on the development of the factual record

13

in the state-court case. This factor therefore weighs in favor of declining jurisdiction.

## IV. CONCLUSION

This declaratory judgment action presents unsettled issues under Pennsylvania law that are best decided by the Pennsylvania judiciary. Moreover, without knowing what the operative pleadings will be in the underlying state-court action, we lack the appropriate foundation to determine whether NIC has a duty to defend or indemnify Cavanaugh's. "[C]onsiderations of practicality and wise judicial administration," *Wilton*, 515 U.S. at 288, the absence of any federal interest in this case, and a deep respect for the Pennsylvania judiciary's skill in interpreting Pennsylvania law and policy compel us to decline jurisdiction over this declaratory judgment action. Accordingly, Defendant Dzarnyi Pukuma's Motion to Dismiss Plaintiff's Complaint will be granted. Plaintiff NIC's Cross-Motion for Summary Judgment will be dismissed as moot.

An appropriate Order will follow.

> **BY THE COURT:**
>
> _____
> **R. BARCLAY SURRICK, J.**